IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES UPTHEGROVE,

                                                                        OPINION and ORDER

                  Plaintiff,

                                                                        07-cv-596-bbc

      v.

HEALTH PROFESSIONALS, LTD. and
STEPHEN CULLINAN, M.D.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for monetary relief brought under 42 U.S.C. § 1983.  Plaintiff James Upthegrove contends that defendants Health Professionals Ltd. and Stephen Cullinan violated his Eighth Amendment rights by denying him his prescribed clonazepam without consulting a psychiatrist while plaintiff was incarcerated at the Eau Claire County jail in 2007.  Jurisdiction is present. 28 U.S.C. §§ 1331 and 1367.

      Now before the court is a motion for summary judgment filed by defendants Health Professionals Ltd. and Stephen Cullinan on the following grounds: (1) plaintiff failed to exhaust his administrative remedies as required by Prison Litigation Reform Act; (2) plaintiff cannot show that defendant Health Professionals, Ltd. has a policy, custom or widespread

1

practice of denying medication to inmates at the Eau Claire County jail; (3) plaintiff cannot show that defendants acted with deliberate indifference to plaintiff's serious mental health needs; (4) defendants are entitled to qualified immunity; and (5) plaintiff has failed to offer expert testimony in support of his medical malpractice claim.

I find that plaintiff has failed to adduce sufficient evidence that defendants Health Professionals' and Stephen Cullinan's decisions to deny him clonazepam violated the Eighth Amendment. Although plaintiff's federal claim must be dismissed, I find, for reasons of judicial economy, comity and fairness to the parties, that exercising jurisdiction over his state law claim of malpractice is proper under § 1367(c). With respect to that claim, I find that plaintiff has failed to establish an essential element of his claim and defendants' motion will be granted.

Before turning to the undisputed facts, I address one preliminary matter. In their summary judgment brief, defendants argue that plaintiff's claims in this case are limited to incidents that occurred between September 17, 2007 and October, 2007 and because the allegations against defendant Cullinan concern a time prior to September 17, 2007, the claims against him should be dismissed. When the court accepted plaintiff's amended complaint on January 22, 2009, dkt. #55, the amended complaint became the operative pleading. It includes claims about incidents occurring before September 17, 2007. Therefore, defendants' motion to dismiss defendant Cullinan will be denied.

From the parties' proposed findings of fact, I find the following facts are undisputed and material.

UNDISPUTED FACTS

A. Parties

Plaintiff James Upthegrove is a Wisconsin state inmate who suffers from mental illness. He was incarcerated in the Eau Claire County jail from March 14 to May 18, 2007, from June 5, 2007 to June 11, 2007 and from September 17, 2007 to December 10, 2007. Plaintiff has a long history of mental illness and has previous diagnoses of major depressive disorder with anxiety and periodic psychosis and personality disorder with anti-social, borderline and dependent features. Plaintiff has been prescribed various kinds of medications, including clonazepam, which is a benzodiazepine used to treat anxiety disorders and panic attacks.

Defendant Health Professionals, Ltd., is an Illinois corporation that provided medical services to the inmates at Eau Claire County jail at all times relevant to this case. In 2007, Health Professionals did not provide mental health services to the jail but had a contract with the Omne Clinic to provide these services. However, only Health Professionals jail physicians could prescribe psychiatric medications. Health Professionals had a psychiatrist on staff whom jail physicians could consult if necessary.

At all times relevant to this case, defendant Stephen Cullinan was the medical doctor at Eau Claire County jail and an employee of Health Professionals.

### B. Diagnosis at the Omne Clinic

On February 14, 2007, plaintiff was seen at the Omne Clinic by Dr. James Rugowski. Plaintiff told Rugowski that he was taking 1 milligram of lorazepam four times daily. Lorazepam is also a benzodiazepine; it is stronger and more addictive in nature than clonazepam. Rugowski decided to switch plaintiff immediately to clonazepam for his anxiety disorder and panic attacks and lowered his dose to 2 milligrams a day. Rugowski prescribed clonazepam again on March 7, 2007, noting that it should be taken "as needed" and not on a set schedule.

### C. Treatment at Eau Claire County Jail

On March 14, 2007, plaintiff was arrested and incarcerated at Eau Claire County jail. That same day he informed the Health Professionals medical staff at the jail that

> I take clonzepam 1 mg bid but I am told that I will be refused this med while in jail. You can contact the Omne Clinic—Dr. Rugowski. I need this medication. I am under court order to take ALL my psychotropic meds but I am being denied them. The jail physician doesn't even know me so how can he deny me any meds? I am in violation of my court order due to the fact that I am not taking my meds as prescribed by my psychiatrist who I've been seeing not some jail physician who has never seen me nor is he a psychiatrist.

4

Rose Aff,, dkt. #27-2, exh. A.  After plaintiff had been convicted of criminal activity in April 2003 and August 2005, the Circuit Court for Eau Claire County required him to "take medications as prescribed by [a] psychiatrist/psychologist" as conditions of probation and extended supervision.  On March 14, 2007, Stacy Rose, a nurse employed by Health Professionals, told plaintiff that it was likely he would not get clonazepam while in jail.  Plaintiff told Rose some time in March 2007 that he had not been taking clonazepam regularly outside of jail.

At all relevant times, defendant Health Professionals had a written formulary of prescription and over-the-counter drugs available for dispensing at the Eau Claire County jail.  Drugs not on the formulary list were not typically prescribed to inmates.  If a Health Professionals physician determined that a non-formulary medication should be given, however, he could prescribe it if it was approved by Health Professionals' utilization management department.  Clonazepam was not on the formulary list and no Health Professionals physician prescribed it in 2007.

On March 16, 2007, plaintiff saw Dr. Teodoro Romana, who prescribed doxepin instead of clonazepam for plaintiff's complaints of anxiety and depression because clonazepam was not on the formulary list.  Romana had previously prescribed doxepin as well as librium as a substitute for benzodiazepines.

On April 20, 2007, someone brought plaintiff clonzepam from his home.  Kimberly

5

Cronk, a nurse employed by Health Professionals, verified that the prescription was written within the past three months, that the bottle contained the correct pill count and that the pills were in the proper bottle. Defendant Cullinan approved the medication by telephone but ordered that plaintiff receive one tablet once a day rather than twice a day.

On April 23, 2007, plaintiff asked for an increase in his clonzepam dosage, complaining that he had severe panic attacks twice a day. On April 27, 2007, Nurse Rose spoke with Cullinan regarding plaintiff's request for an increase in his dosage. At the time, plaintiff was taking clonazepam, clonidine and amitriptyline. Cullinan ordered the discontinuation of plaintiff's clonazepam. On April 28, 2007, plaintiff complained about the discontinuation order.

On May 3, 2007, plaintiff filed a Eau Claire County jail grievance form, objecting to the decision to discontinue his clonazepam and saying that he was suffering mentally and physically. On that same day, Sergeant Staber responded to plaintiff's grievance, stating that "I do not have the authority overrule the doctor's decision. Your concerns will be passed along to the jail medical staff." Rose Aff., dkt. #27-2, exh. N. On May 4, 2007, Nurse Rose received a copy of plaintiff's grievance form. Plaintiff was released from Eau Claire County jail on May 18, 2007.

On June 5, 2007, plaintiff was incarcerated again at Eau Claire County jail. The following day he requested to be put back on the medications he had received during his

6

previous stay: doxepin, amitriptyline and atenol.  On June 8, 2007, Dr. Romana approved a prescription for these medications.  On June 11, 2007, plaintiff was released from jail.

On September 17, 2007, plaintiff was arrested again and sent to Eau Claire County jail.  During booking, he reported having taken two handfuls of Valium within the previous hour, attempting suicide while in jail by hanging himself and overdosing on other people's pills.  On September 19, 2007, plaintiff submitted a request in which he stated:

> I need my meds.  I have no way to get them here because I have to pick them up in person weekly.  I take: Depakote 500 mg in AM and 1000 mg at bedtime, seroquel 50 mg at bedtime, lorazapam 1 mg twice a day prn (as needed) haldol 2 mg at bedtime, Prozac 10 mg in AM. clonazepam 1 mg twice a day, hydroxylzine 200 mg every 6 hours prn (as needed)

Rose Aff., dkt #27-2, exh. T.  Defendant Rose responded to plaintiff's request on the same day by "reminding him that [Health Professionals] did not supply some of the meds he listed" and asking him to describe his symptoms.  In response, plaintiff wrote a second complaint, stating that he was having hallucinations, panic attacks, anxiety, disturbed sleep, manic episodes and withdrawal.  On September 20, 2007, Rose responded to plaintiff's complaint by telling him that he was on a list to see a physician.

On September 21, 2007, plaintiff saw Dr. Romano.  He admitted to having used heroin while out of jail and suffering withdrawal symptoms during the previous past few days.  Because of his withdrawal complaints, Romano placed plaintiff on clonidine for eight days in accordance with Health Professionals withdrawal protocol.  Plaintiff was also

prescribed nightly doses of doxepin and amitriptyline but did not receive clonazepam.

Plaintiff received clonidine up until September 29, 2007.  On October 1, 2007, plaintiff requested clonidine because he was still suffering from withdrawal.  The following day, he complained of withdrawal symptoms from heroin and asked for a check of his vital signs.  On October 3, 2007, Rose responded to plaintiff's two requests and told plaintiff that Health Professionals's protocol would not allow for an extension of his clonidine treatment.  She told him she would check his vital signs later in the day, which she did.

On October 5, 2007, plaintiff met with a Health Professionals physician.  (The parties do not identify the doctor.)  Plaintiff demanded his previous medications and reported feeling as though he were still suffering withdrawal from heroin.  Because plaintiff was no longer on "the street getting drugs," the jail physician did not prescribe clonodine again.  Instead, he prescribed 30 days of 5 mg of haldol, an anti-psychotic used to treat schizophrenia.  On November 29, 2007, plaintiff saw Dr. Chambers, who refilled his prescriptions for haldol and doxepin for another 90 days.

Plaintiff was transferred to Dodge Correctional Institution on December 10, 2007. At no time during his stay at Eau Claire County jail did any member of the Health Professionals staff contact plaintiff's psychiatrist, Dr. Rugowski, to discuss treatment of plaintiff's mental health.

OPINION

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor. Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Although defendants raise exhaustion as the fourth ground for granting summary judgment in their favor, the issue must be addressed first. Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282,

9

284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025. Because exhaustion is an affirmative defense, defendants bear the burden of establishing that plaintiff failed to exhaust. Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006); Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).

Defendants argue that plaintiff failed to comply with § 1997(e) because the Eau Claire County jail grievance procedure requires inmates to appeal a rejected complaint all the way up to the county sheriff. I disagree. First, defendants have adduced no evidence about the Eau Claire County jail's grievance procedure other than Nurse Rose's affidavit regarding the procedure. Even if the nurse is correct, defendants have submitted no evidence that plaintiff knew about this procedure and knew that he was required to appeal an adverse decision. When Sergeant Staber responded to the complaint that plaintiff filed about his medication, he did not inform plaintiff that he should appeal the decision if his complaint was not resolved. Defendants have not shown that plaintiff would have had any knowledge of the need to take his complaint any further.

Moreover, Staber's telling plaintiff that Staber did not have the authority to overrule the doctor's decision would have led plaintiff to believe that his medical complaints could not be addressed through the Eau Claire County jail grievance system. Plaintiff was entitled to rely on Staber's representation. Defendants cannot use that reliance against him. Westefer v. Snyder, 422 F.3d 570, 580 (7th Cir. 2005) (when prison officials fail to "clearly

10

identif[y]" proper route for exhaustion, they cannot later fault prisoner for failing to predict correct choice); Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (dismissal not appropriate when prisoner failed to complete grievance process because of misinformation provided by prison officials); Shaw v. Jahnke, 607 F. Supp. 2d 1005, 1010 (W.D. Wis. 2009) ("In determining whether a particular remedy was 'available' to a prisoner who failed to exhaust, the Court of Appeals for the Seventh Circuit has held that the key question is whether the prisoner or an official was at fault for the failure to complete the grievance process properly"). Therefore, I conclude that defendants have failed to show that plaintiff did not comply with § 1997(e). Their motion for summary judgment on this ground will be denied.

With respect to defendants' claim of deliberate indifference, defendants argue that they are entitled to summary judgment on three separate grounds: plaintiff has failed to adduce any evidence of a policy, custom or widespread practice of constitutional violations by defendant Health Professionals; plaintiff cannot show that defendants acted with deliberate indifference; and defendants are entitled to qualified or good faith immunity. Although defendants argue that plaintiff cannot show that they had a policy or practice of denying prescribed medications in violation of the Eighth Amendment, the real issue is whether plaintiff can show that this policy or defendant Cullinan's decision to discontinue plaintiff's prescription for clonzepam on April 27, 2007 injured him.

11

To defeat defendants' motion for summary judgment, plaintiff must adduce evidence from which a reasonable jury could infer that he had a serious mental health need (objective component) and that defendants were deliberately indifferent to this need (subjective component).  Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).  In this case, defendants do not deny that plaintiff's mental illness is a serious medical health need. Therefore, I will assume that it is.  To show deliberate indifference, a plaintiff must establish that the defendants were "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health.  Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001).  When a plaintiff receives some form of medical care, he can show deliberate indifference only if he can prove that the care he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition.  Snipes v. DeTella, 95 F. 3d 586, 592 (7th Cir. 1996).  Morever, plaintiff must show that he was injured as a result of defendants' decision to deny him the medications he was prescribed.  Williams v. Liefer, 491 F.3d 710, 714-16 (7th Cir. 2007)("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay [in treatment] was detrimental" to his health.); Langston v. Peters, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (plaintiff failed to produce evidence that delay in treatment caused serious injury).

In this case, plaintiff does not claim that he received no medication or treatment for

12

his mental health needs. He cannot. The undisputed facts show that he repeatedly received some form of medication or treatment to address his complaints that he suffered from anxiety and panic attacks during all three of his stays at Eau Claire County jail. Morever, the jail doctors also prescribed medication for plaintiff's complaints of heroin withdrawal.

According to plaintiff, this treatment was not enough because defendants denied him the clonzepam he was prescribed by his psychiatrist Dr. Rugowski and did so without consulting another psychiatrist. It is questionable why the medical staff and defendant Cullinan would deny plaintiff his medication without first consulting a psychiatrist; the decision to discontinue the clonzepam altogether could have caused a substantial risk of harm to plaintiff. However, plaintiff fails to show that he was injured in any way by any of defendants' treatment decisions.

Plaintiff has adduced no evidence that his panic attacks increased or his anxiety disorder was made worse as a result of defendant Health Professionals' repeated decisions to substitute doxepin for clonzepam or as a result of defendant Cullinan's decision to discontinue clonzepam on April 27, 2007. Plaintiff proposes no facts that either during his stay or soon after his stay at the jail, his anxiety or panic attacks increased in frequency or intensity. In fact, plaintiff agreed with Nurse Rose's statement that he seemed calm and not anxious when she saw him in the jail in the spring of 2007. Resp. to dfts.' PFOF, dkt. #87, at 31. Morever, plaintiff does not even address the issue of injury in his brief in opposition

13

to defendants' motion. Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) (failure to respond to defendants' argument on summary judgment constitutes waiver).

The undisputed facts show that plaintiff filed two separate complaints regarding his mental condition. The first was on April 23, 2007, when he complained that he was suffering panic attacks twice a day. The second was filed on September 19, 2007, when he complained that he was suffering from panic attacks, anxiety, hallucinations, disturbed sleep, manic episodes and withdrawal. Even if I were to consider plaintiff's complaints as evidence of harm, they fall short in at least two respects.

Apart from his own subjective belief, plaintiff has offered no verifying medical evidence that these symptoms were a result of not having clonazepam rather than the result of some other condition. Langston, 100 F.3d at 1240 ("[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). When he filed his first complaint on April 23, 2007, plaintiff was taking the clonazepam he had received on April 20, 2007. Tellingly, he lodged no complaint of increased panic attacks or anxiety between March 14, 2007 and April 20, 2007 when he was not receiving clonazepam. Also, after defendant Cullinan discontinued the clonzepam on April 27, 2007, plaintiff lodged no complaints of increased panic attacks or anxiety despite

not receiving his prescribed medication. Therefore, plaintiff's increased panic attacks do not appear to be related to the decision to discontinue clonazepam when he first arrived at the jail.

With respect to his second complaint, plaintiff filed it on September 19, 2007, two days after arriving at Eau Claire County jail. At this time, he would have been without medication for two days at most. However, the undisputed facts show that two days after he filed his complaint, plaintiff received prescriptions for doxepin, amitriptyline and clonidne for his symptoms of heroin withdrawal. From September 21, 2007 until December 2007 when he was transferred to Dodge Correctional Institution, plaintiff did not complain that he was suffering from anxiety or panic attacks. Instead, he lodged repeated complaints that he was suffering withdrawal symptoms associated with his heroin use. In each instance he received medication for these complaints. Therefore, it would not be reasonable to conclude that plaintiff's complaints of panic attacks, anxiety and hallucinations were caused by the denial of clonazepam alone.

Moreover, plaintiff has offered no expert testimony to support a finding that specifically denying clonazepam caused plaintiff the harm he alleged in his two complaints. Plaintiff's expert Kenneth Robbins, a licensed psychiatrist, opines that it was both poor practice and below the standard of care for defendants to discontinue plaintiff's medications without consulting a psychiatrist or thoroughly reviewing plaintiff's medical history.

15

However, Robbins does not say that in plaintiff's case the denial of clonazepam caused plaintiff's condition to deteriorate. Robbins states in a conclusory fashion that "the change in [plaintiff's] medication forced him to suffer needlessly" and that "the poor medical care he received in the Eau Claire County jail, continues to cause [plaintiff] emotional pain, and this could likely have been prevented by giving him proper medical care." Koop Dec., dkt. #81-2, at 12. In neither instance, does Robbins identify examples of how plaintiff suffered while in jail or that the discontinuation of the clonazepam was a specific cause of any harm. Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 741, n.6 (7th Cir. 1998) ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions."). Without evidence that defendants' treatment decision caused some form of injury or harm, plaintiff cannot succeed on his claim of deliberate indifference against either defendant. Williams, 491 F.3d at 714-15 (inmate must offer medical evidence that prison officials actions, not inmate's underlying condition, caused harm). Accordingly, defendants' motion for summary judgment on plaintiff's Eighth amendment claim will be granted.

Because I will grant defendants' motion for summary judgment as to plaintiff's federal claim, I must consider whether it would be proper to proceed on plaintiff's state law claim. Plaintiff does not suggest that grounds exist for exercising diversity jurisdiction over the case. Therefore, the only ground for jurisdiction would be supplemental jurisdiction under 28

U.S.C. § 1367. Under § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state law claims once federal claims have been dismissed. "[T]he general rule is that, when all federal-law claims are dismissed before trial, the [supplemental] claims should be left to the state courts." Wright v. Associated Insurance Companies, Inc., 29 F.3d 1244, 1251 (7th Cir. 1994). However, if judicial economy, convenience, fairness and comity warrant retaining supplemental jurisdiction, a district court may do so. Hansen v. Board of Trustees, 551 F.3d 599, 607 (7th Cir. 2008); see also Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1251-52 (7th Cir. 1994). For example, a court may retain jurisdiction when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." Graf v. Elgin, Joliet and Eastern Railway Co., 790 F.2d 1341, 1347-48 (7th Cir. 1986). Also, the court may retain jurisdiction if the disposition of the state law claim is clear. Khan v. State Oil Co., 93 F.3d 1358, 1366 (7th Cir.1996) (if correct disposition of supplemental claims is clear, considerations of economy favor retaining jurisdiction).

In this case, it is proper to retain jurisdiction. The court and the parties have expended resources in dealing with this case. Plaintiff filed his initial claim almost two years ago, on October 22, 2007. The court has addressed two separate motions for summary judgment, appointed counsel to assist plaintiff and supervised the parties' discovery on all

17

the claims in this case. In addition, the resolution of plaintiff's state law claim is clear because he has failed to establish essential elements of his claim.

"A claim for medical malpractice, as all claims for negligence, requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." Paul v. Skemp, 242 Wis. 2d 507, 520, 625 N.W.2d 860 (2001). In this case, plaintiff has failed to adduce evidence that either defendant Health Professionals or Cullinan caused plaintiff any injury or harm by denying him clonazepam. As a result, plaintiff cannot establish two essential elements of his claim. As a matter of law, he cannot show that it was malpractice to deny him his medication. Therefore, defendants' motion for summary judgment will be granted.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Health Professionals Ltd. and Stephen Cullinan, dkt. #57, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 24th day of July, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge